**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>DANIEL BENYAMIN<br>*a/k/a* DANIEL BENYAMINOV<br>*d/b/a* BENYAMIN CONSTRUCTION &<br>REMODELING, LLC<br><br>and<br><br>LUCY BENYAMIN<br>*d/b/a* BENYAMIN CONSTRUCTION &<br>REMODELING, LLC<br><br>Debtors. | **FOR PUBLICATION**<br><br>Case No. 17-12677 (MG)<br><br>Chapter 11 |

**MEMORANDUM OPINION AND ORDER SUSTAINING DEBTORS'**
**OBJECTION TO PROOF OF CLAIM # 5-1**

*A P P E A R A N C E S:*

KORNFELD & ASSOCIATES, P.C.
*Attorneys for Debtors Daniel Benyamin and Lucy Benyamin*
240 Madison Avenue, 8th Floor
New York, NY 10016
By:    Randy M. Kornfeld, Esq.

RAS BORISKIN LLC
*Attorneys for Ditech Financial LLC*
900 Merchants Concourse
Westbury, NY 11590
By:    Michael A. Samuels, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

      Pending before the Court is the objection (the "Objection," ECF Doc. # 29) filed by the debtors Daniel Benyamin and Lucy Benyamin (the "Debtors") to Claim # 5-1 (the "Claim") filed by Ditech Financial LLC ("Ditech") for $455,424.72.  The issue here is important and straightforward.  The Debtors signed the promissory note, a New York Fixed Rate Note, on

December 3, 2003, in favor of IndyMac Bank, F.S.B. ("IndyMac"), secured by a mortgage on their condominium located at 319 East 105 Street, Unit # 5E, New York, New York 10029 (the "Property"). At some time thereafter, IndyMac endorsed the note in blank. IndyMac failed on July 11, 2008 and was taken over by the Federal Deposit Insurance Corporation (the "FDIC"). The FDIC sold most of IndyMac's assets to OneWest Bank ("OneWest"), which was acquired by CIT Group ("CIT") in July 2014. No evidence has been offered that Ditech or Green Tree Servicing, LLC ("Green Tree"), with which Ditech merged in 2015, acquired assets from or had any contractual relationship with IndyMac, OneWest or CIT. No evidence has been offered to show who is in possession of the original note endorsed in blank.

New York law is clear that in order to have standing to file a proof of claim, or to foreclose on a mortgage, the holder of the note endorsed in blank must offer competent proof that it possesses the note. Ditech filed the Claim on December 26, 2017, without producing any proof that Ditech has the original note endorsed in blank. Despite multiple requests over many months by Debtors' counsel to Ditech and its counsel to provide evidence that Ditech holds the note, Ditech has failed to provide any proof thereof. Ditech's standing issue had been raised at a March 19, 2018 conference before this Court. Ditech's counsel filed a notice of appearance in this case on April 18, 2018 (ECF Doc. # 23) and filed on the same day a letter (the "Letter," ECF Doc. # 24) advising the Court "of an apparent standing dispute" with respect to Ditech's Claim, and that counsel "had requested Ditech to provide the original collateral file for the subject loan." The Debtors' counsel filed the Objection on May 3, 2018, noticed for hearing on June 19, 2018, with a response deadline of June 12, 2018. Ditech's counsel was served with notice of the Objection but did not file a timely response, and neither did Ditech's counsel appear at the June

19, 2018 hearing. The Court took the matter under submission.[1]

As discussed below, the Court laid out the legal requirements for an alleged mortgagee to establish standing to file a proof of claim in *In re Minbatiwalla*, 424 B.R. 104 (Bankr. S.D.N.Y. 2010). The requirements have not changed since that decision. Ditech failed to meet those requirements. For the reasons explained below, the Court sustains the Debtors' Objection to the Claim.

## I.    BACKGROUND

On September 25, 2017 (the "Petition Date"), the Debtors filed their voluntary petition under chapter 11, and have since been managing their property as debtors in possession. (Obj. ¶ 5.) The Debtors are the owners of the Property. The Debtors' Schedule A lists the value of the Property as ranging from $700,000 to $750,000. (ECF Doc. # 12-1 at 3.) According to the Debtors' Schedule D, the Property is subject to a lien held by IndyMac for a disputed claim in the amount of $400,000. (ECF Doc. # 12-3 at 1.) Schedule D lists IndyMac's claim as a contractual claim incurred in 2003. (*Id.*) Schedule E/F lists "Indymac Federal Bank" as having a $410,000 disputed claim. (ECF Doc. # at 2.) Ditech is listed on the creditors' list for "notice purposes only." (*Id.*)

On December 26, 2017, Ditech filed a proof of claim in this case for money loaned in the amount of $455,424.72, including interest and prepetition arrears, secured by the Property. (*See* Claim at 1–2.) Ditech's Claim includes (i) the Debtors' loan payment history from June 2008 to November 2017 (*id.* at 4–15), (ii) a copy of the note, dated December 15, 2003, whereby the Debtors promised to pay the principal amount of $247,500.00 (the "Note," Claim Part 2 at 1–3),

---

[1]    On June 26, 2018, Ditech's counsel filed an untimely response (the "Response," ECF Doc. # 51), which will be disregarded by the Court, other than to note that the Response still offers no proof that Ditech holds the original note endorsed in blank.

(iii) the recordation of lien on the Property (*id.* at 4), (iv) the mortgage (the "Mortgage," *id.* at 5–23), and an affidavit (*id.* at 25) and a certificate of merger (*id.* at 26) stating that Green Tree was merged into DT Holdings LLC and Ditech Mortgage Company and that such merger resulted in the entity Ditech as of August 31, 2015.

On March 19, 2018, the Court held a case management conference during which the Debtors' counsel raised the issue of Ditech's standing to file the Claim. On April 18, 2018, Ditech's counsel filed a notice of appearance (ECF Doc. # 23), and a letter advising the Court "of an apparent standing dispute" with respect to Ditech's Claim (ECF Doc. # 24). The letter stated that Ditech's counsel "has requested Ditech to provide the original collateral file for the subject loan to my office." (*Id.*) The letter further explained "[u]pon receipt of the file, my office is agreeable to coordinate with the Debtors' counsel to arrange a reasonable opportunity for the Debtors' counsel to review the file at our office." (*Id.*) Ditech's counsel has not provided proof that Ditech has the original note endorsed in blank.

On May 3, 2018, the Debtors objected to Ditech's Claim, arguing that Ditech had "produced no documentation, be it the original note and mortgage or an assignment of same permitting them to have standing to assert its claim." (Decl. at 1.) The Debtors submit that they have no liability to Ditech, and that Ditech's Claim should be expunged. (Obj. Ex. A.)

4

## II. LEGAL STANDARD

As explained below, New York law and bankruptcy law are clear that standing to file a proof of claim in the bankruptcy court, or to permit foreclosure of a borrower's property in state court, requires that the lender or its agent (usually a loan servicer) holds the promissory note on which the mortgage is based. Standing to file a proof of claim or to lift the automatic stay to permit foreclosure involve largely the same analysis.

### A. Standing to File a Proof of Claim

To file a proof of claim, a claimant must be a "creditor or the creditor's authorized agent." FED. R. BANKR. P. 3001(b). A "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). A claim is a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5)(A) and (B). "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).

"[The] Bankruptcy Code and Fed. R. Civ. P. 17 each have liberal standing provisions, designed to allow a party to appear as long as it has a direct stake in the litigation under the particular circumstances." *In re Conde–Dedonato*, 391 B.R. 247, 250 (Bankr. E.D.N.Y. 2008) (citation and internal quotation marks omitted). "A servicer of a mortgage is clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its duties as a servicer." *Id.* (citing *In re Viencek*, 273 B.R. 354, 359 (Bankr. N.D.N.Y. 2002); *Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002); *Bankers Trust (Delaware) v. 236 Beltway Inv.*, 865 F. Supp. 1186, 1191 (E.D. Va. 1994); *In re Tainan*, 48 B.R. 250, 252 (Bankr. E.D. Pa. 1985) (determining that a mortgage servicer was a party in interest for purposes of a relief from stay proceeding)). In

5

*Conde–Dedonato*, the court determined that where the loan servicer "provided an affidavit attesting that it is the servicer of the note and mortgage, has provided the original note and mortgage, was listed on the Debtor's Schedules as having a claim against the estate, and was provided for in the Debtor's Chapter 13 Plan," and where "[t]he Debtor d[id] not dispute that [servicer was] the servicer . . . it [was] clear that [servicer] is the servicer of the note and mortgage and it ha[d] standing to file a proof of claim against the Debtor." 391 B.R. at 250.

An assignee of a note and mortgage also has standing to file a proof of claim. *Id.* at 251. In New York, assignments can be effected solely by the transfer of the relevant note and mortgage. *See* N.Y. Real Property Law § 244 ("A grant takes effect, so as to vest the estate or interest intended to be conveyed, only from its delivery; and all the rules of law, now in force, in respect to the delivery of deeds, apply to grants hereafter executed."); *see also Deutsche Bank Nat'l Tr. Co. v. McRae*, 27 Misc.3d 247, 250 (N.Y. Sup. Ct. 2010) (citation omitted) ("A mortgage can be assigned in two ways—by delivery of the bond and mortgage by the assignor to the assignee with the intention that all ownership interests thereby transferred, or by a written instrument of assignment."). Thus, an assignee can demonstrate standing by attaching the note and the mortgage to a proof of claim; it does not need to attach a written assignment to the proof of claim. *Conde–Dedonato*, 391 B.R. at 251 ("Thus, a mortgage and note can be transferred by delivery, and do not have to be evidenced by a written assignment.").

**B.      Standing to Obtain an Order Lifting the Automatic Stay**

Courts require an affidavit from someone with personal knowledge establishing facts supporting standing, or possession of the original note and mortgage to establish standing in a state court foreclosure action and in a motion to lift the automatic stay in bankruptcy court under 11 U.S.C. § 362(d). *See Mortg. Elec. Registration Sys., Inc. v. Coakley*, 41 A.D.3d 674 (2d

6

Dep't 2007) (applying UCC 3–104 and 3–204 analysis to find that transfer of promissory note was sufficient to establish plaintiff as lawful holder of note); *HSBC Bank USA, N.A. v. Cherry*, 2007 WL 4374284, at *1 (N.Y. Sup. Ct. Dec. 17, 2017) (requiring multiple affidavits and a valid power of attorney from alleged assignee to demonstrate standing).

New York law invariably requires possession of the original note underlying the mortgage for a claimant to assert standing to file a proof of claim in the bankruptcy court or to foreclose on a mortgage in state court. This Court has repeatedly reminded purported mortgagee that, under New York law, the mortgage follows the note, and the assignment of the mortgage without the note is not sufficient to have standing to pursue state law remedies on the note. For instance, in *In re Lippold*, U.S. Bank National Association ("U.S. Bank") moved to lift the stay to be allowed to proceed with foreclosure on the debtor's property. 457 B.R. 293, 294 (Bankr. S.D.N.Y. 2011). Aegis Funding Corporation ("Aegis"), the original holder of the note and mortgage, had conferred its right as mortgagee, but not with respect to the note, to Mortgage Electronic Registration Systems, Inc. ("MERS"), solely in its capacity as "nominee" for Aegis. *Id.* at 295. MERS then purported to assign the mortgage and the note to U.S. Bank. *Id.* at 295–96. However, as the Court noted, Aegis had not conferred any rights with respect to the note to MERS. *Id.* at 296. Accordingly, it was beyond MERS's authority to assign the note, and U.S. Bank otherwise provided no evidence that it received physical delivery of the note, or that it was in possession of the note. *Id.* at 299. The Court found "[u]nder New York law, a plaintiff has standing to commence a mortgage foreclosure action 'where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced.'" *Id.* at 296–97 (citing *Bank of N.Y. Silverberg*, 926 N.Y.S.2d 532, 536 (2d Dep't. 2011) (citing cases)). Importantly, the Court held that "foreclosure of a mortgage may not be

7

brought by one who has no title to it and absent transfer of the debt, the assignment of the mortgage is a nullity." *Id.* at 297 (citing *Kluge v. Fugazy*, 145 A.D.2d 537, 538 (2d Dep't. 1988) (citing cases); *HSBC Bank USA, Nat. Ass'n v. Miller*, 26 Misc.3d 407, 411–12 (N.Y. Sup. Ct., Sullivan County 2009)); *see also In re Escobar*, 457 B.R. 229, 239–40 (Bankr. E.D.N.Y. 2011) ("New York law has long recognized that assignment of the mortgage carries with it no rights to enforce the debt."). Accordingly, because U.S. Bank had failed to provided satisfactory evidence that it owned or held the note at issue, the Court concluded that U.S. Bank had failed to establish its standing to lift the automatic stay. *Id.* at 299. Likewise, in *Mims*, this Court held that Wells Fargo Bank, N.A. lacked standing to seek relief from the automatic stay because it failed to advance proof that it was the owner of a promissory note given with a mortgage, as it did not provide evidence that "the Note was physically delivered or assigned pursuant to a written agreement." 438 B.R. 52, 56 (Bankr. S.D.N.Y. 2010). The Court followed a "rule of law [which] dates back over one hundred forty years," holding that "[u]nder New York law, 'foreclosure of a mortgage may not be brought by one who has no title to it and absent transfer of the debt, the assignment of the mortgage is a nullity.'" *Id.* (citing *Kluge*, 145 A.D.2d at 538 (citing cases); *HSBC Bank*, 26 Misc.3d at 411–12).

In *In re Idicula*, the Court again outlined the requirements for establishing standing to foreclose on property, including where the note is endorsed in blank. 484 B.R. 284, 287–89 (Bankr. S.D.N.Y. 2013). There, the movant, servicing agent Select Portfolio Servicing, Inc., argued that U.S. Bank held the right to enforce a promissory note securing the property at issue because the note was transferred to U.S. Bank by way of an allonge. *Id.* at 286. The Court held that the purported allonge could not support U.S. Bank's standing because the allonge was never submitted in evidence. *Id.* at 288. The Court also noted that the note included two endorsements

8

not mentioned in the arguments in support of U.S. Bank's motion. *Id*. at 286. The second endorsement provided as follows:

> PAY TO THE ORDER OF
>
> WITHOUT RECOURSE
> AEGIS MORTGAGE CORPORATION
> *Trymeka McCoy*
> TRYMEKA McCOY
> ASSISTANT SECRETARY

*Id*. The Court explained that "the Note was endorsed in blank (*i.e.*, a result of the blank space between 'PAY TO THE ORDER OF' and 'WITHOUT RECOURSE' in the second endorsement)." *Id*. at 286–87. And the Court held that when a note is endorsed in blank, "[u]nder New York law, delivery of the original Note endorsed in blank is effective to transfer ownership of the Note." *Id*. at 287. Because U.S. Bank produced no evidence that "delivery and possession of the original note endorsed in blank is the legal basis for the authority of U.S. Bank (and Select Portfolio Servicing on its behalf) to lift the automatic stay," the Court concluded that U.S. Bank had failed to show it had standing to foreclose on the debtor's property. *Id.* at 287, 289; *see also Green Tree Servicing LLC v. Christodoulakis*, 136 F. Supp. 3d 415, 428–29 (E.D.N.Y. 2015) ("[P]laintiff's physical possession of the Note, containing an indorsement 'in blank,' at the time the action was commenced . . . was sufficient to confer standing upon it to commence this action seeking to enforce payment of the Note.") (omitting citation); *Wells Fargo Bank*, *NA v. Ostiguy*, 127 A.D.3d 1375, 1376 (N.Y. App. Div. 2015) ("Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff.") (omitting citation).

### C. Evidence Required to Support Proofs of Claim

Unless a proof of claim is properly executed and filed in accordance with the rules, the proof of claim does not constitute *prima facie* evidence of the validity and amount of the claim. *See* FED. R. BANKR. P. 3001(f).

### 1. Burden of Proof of Claim

Bankruptcy Rule 3001(f) provides that "a proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." FED. R BANKR. P. 3001(f). Bankruptcy Rule 3001 requires a claimant to attach supporting documentation to a proof of claim in a bankruptcy case. Bankruptcy Rule 3001(c) provides that

> [W]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

FED. R. BANKR. P. 3001(c)(1). "Section (c)(1) requires that, if the claim is based on a writing, that writing must be attached or the circumstances of its unavailability must be explained." *In re Gorman*, 495 B.R. 823, 831 (Bankr. E.D. Tenn. 2013). Bankruptcy Rule 3001(d) provides that "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." FED. R. BANKR. P. 3001(d). In addition, Item 7 on Official Bankruptcy Form B 10, sets forth the content and format for proofs of claim and instructs creditors as follows:

> Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary.

10

Failure to attach the documentation required by Bankruptcy Rule 3001 will result in the loss of the *prima facie* validity of the claim. *In re Lundberg*, 2008 WL 4829846, at *7–8 (Bankr. D. Conn. Oct. 27, 2008) ("If . . . the claimant fails to allege facts in the proof of claim that are sufficient to support the claim, *e.g.*, by failing to attach sufficient documentation to comply with Fed. R. Bankr. P. 3001(c), the claim is . . . deprived of any *prima facie* validity which it could otherwise have obtained."); *see also In re Hight*, 393 B.R. 484, 493 n.7 (Bankr. S.D. Tex. 2008) ("[F]ailure to comply with Rule 3001(c) merely renders a claim to not constitute 'prima facie evidence of the validity and amount of the claim.'") (internal citation omitted). However, failure to attach the required documentation does not automatically render the claim invalid. *Hight*, 393 B.R. at 493 n.7 ("[W]hile the Objection to Claim properly states that failure to comply with Rule 3001(c) is 'improper,' the Court notes that such a failure does not automatically render a claim invalid.").

### 2. Level of Documentation Required of Creditor for Prima Facie Validity of a Claim

This Court's opinion in *Minbatiwalla*, 424 B.R. 104, a case in which a proof of claim was expunged, analyzed at length the level of documentation required to establish the *prima facie* validity of a claim which had purportedly been assigned. *See id*. at 112. Noting that state law principles and the Uniform Commercial Code governed what is required to effectuate an assignment, the Court reviewed cases interpreting the requirements for claims associated with secured mortgage claims, as is the case here; it also reviewed cases associated with credit card receivables and promissory notes that the Court found "illustrative" and from which "it took guidance." *Id.* at 112–13. The Court concluded:

> [I]n the mortgage context, the creditor may initially attach only a summary of its claim, containing the debtor's name, account number, the prepetition account balance, interest rate, and a breakdown of the interest charges,

11

> finance charges and other fees that make up the balance of the debt. If the creditor is an assignee, it must also provide an affidavit attesting to the assignment of the note and mortgage. Upon request of the debtor, the creditor has an obligation to provide an additional documentation underlying its summary and affidavit (such as the original note and mortgage, or a written assignment), within two weeks after dispatch or communication of such a request, or the debtor can file an objection based on a lack of adequate documentation.

*Id.* at 117.

### D. Effect of a Claim Lacking Prima Facie Validity

*Minbatiwalla* also thoroughly examined the legal effect of a claimant's failure to attach appropriate documentation to its proof of claim and failure to respond to a debtor's request for information. 424 B.R. at 118–19. The Court explained that

> Bankruptcy Code § 502(b) prescribes nine categories of claims which will be disallowed, including that '(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.' Section 502(b) does not identify 'insufficient documentation' as a basis to disallow a claim.

*Id*. at 118 (citing 11 U.S.C. § 502(b)). The Court observed, however, that "[c]ourts in this Circuit have sustained 'insufficient documentation objections' resulting in the disallowance of claims." *Id*. at 118–19 (citing *In re Porter*, 374 B.R. 471, 480 (Bankr. D. Conn. 2007) ("[U]nder some circumstances lack of [documentation required by Bankruptcy Rule 3001(c)] followed by a creditor's failure to appear or otherwise response to an objection . . . made on the grounds of insufficient annexed documentation may result in a disallowance of the claim on procedural (i.e. default) grounds.")). The Court concluded that:

> This Court agrees with the rationale of Judge Weil in *Porter*, 374 B.R. 471, that in certain circumstances claims can be disallowed for failure to support the claim with sufficient evidence, even if this is not a specifically enumerated reason for disallowance under 11 U.S.C. § 502(b), because absent adequate documentation, the proof of claim is not sufficient for the objector to concede the validity of a claim.

12

*Id*. at 119.

Even where the claimant fails to attach sufficient documentation to its proof of claim, where the debtor schedules a claim that is substantially similar to the claim at issue by the purported assignee but to the benefit of a different creditor, courts have used the debtor's acknowledgment in schedules that a lien exists against the property to sustain a lack of sufficient documentation objection, but have permitted the filing of new proofs of claim. *In re Parrish*, 326 B.R. 708, 718–19 (Bankr. N.D. Ohio 2005). The *Parrish* court sustained a debtor's objection to a proof of claim based on lack of sufficient documentation, but because the debtor acknowledged the debt was owed to some entity, and presumed there was still a lien on the real estate at issue, the court gave the entity that filed a proof of claim "or whoever actually [held] or [serviced] the claim against the debtor," twenty days from the date of the order sustaining the objection "to file a proof of claim calculated in accordance with the factual findings made" by the court. *Id*. at 718–19. The court directed that if the entity that filed the proof of claim held the note and mortgage, it needed to affix documents to the proof of claim establishing that relationship. *Id.* at 721–22. Alternatively, if the entity that filed the proof of claim was not the holder, it was "to give notice to the holder of this [twenty-day] deadline and [wa]s to file a notice with the court that such notice [had] been given." *Id.* at 722. The debtor had twenty days after the proof of claim was filed to file an objection to it, if any. *Id.*

### III. DISCUSSION

In this case, Ditech has known for months that its proof of claim was deficient in failing to attach proof that it holds the Note. It has had ample time to provide proof but it has failed to do so. As a result, Ditech failed to make a *prima facie* showing of the validity of its Claim, and it failed to demonstrate that it has standing to assert the Claim against the Debtors. For these

13

reasons, the Debtors' Objection is sustained and Ditech's Claim is expunged.

### A. Ditech Has Not Demonstrated Its Standing to Bring the Claim

Ditech has not demonstrated that it has standing to assert its Claim against the Debtors. Ditech's Claim asserts a claim against the Debtors for money loaned in the amount of $455,424.72, including interest and prepetition arrears, secured by the Property. (*See* Claim at 1–2.) Ditech's Claim attached the Debtors' loan payment history, the Note, endorsed in blank, the recordation of lien on the Property, and the Mortgage. The original payee of the Note was IndyMac. Because Ditech is not the original holder of the Note, to establish its standing as an assignee, Ditech was required under New York law to provide proof of an assignment, or by demonstrating that it has physical possession of the Note endorsed in blank. *See, e.g.*, *Conde-Dedonato*, 391 B.R. at 251 ("Thus, a mortgage and note can be transferred by delivery, and do not have to be evidenced by a written assignment.") Some courts have also recognized standing where the creditor has filed one or more affidavits from individuals with personal knowledge establishing facts supporting standing. *See, e.g.*, *HSBC Bank USA*, 2007 WL 4374284, at *1 (requiring multiple affidavits and a valid power of attorney from alleged assignee to demonstrate standing).

But Ditech failed to satisfy any of these requirements. Ditech failed to produce either the original Note, an assignment thereof, or any affidavit supporting its standing; and any effort by Ditech to prove standing through proof of assignment of the Mortgage alone would similarly fail. "[F]oreclosure of a mortgage may not be brought by one who has no title to it and absent transfer of the debt, the assignment of the mortgage is a nullity." *Lippold*, 457 B.R. at 297 (omitting citation). Instead, the Note shows an assignment in blank from IndyMac as follows:

14

PAY TO THE ORDER OF

WITHOUT RECOURSE
INDYMAC BANK F.S.B.
*Vincent Dombrowski*
VINCENT DOMBROWSKI
[*illegible*]

(Note at 3.) The assignment in blank (as a result of the blank space between "PAY TO THE ORDER OF" and "WITHOUT RECOURSE") from IndyMac required Ditech to prove it had possession and was the holder of the Note. *See, e.g.*, *Idicula*, 484 B.R. at 287 (holding that delivery and possession of the original note endorsed in blank is the legal basis for the authority of claimant to lift the automatic stay). Ditech did not provide any evidence of such possession.

Moreover, Ditech filed its Claim as "Ditech Financial LLC fka Green Tree Servicing LLC"; the Claim includes a certificate of merger stating that Green Tree was merged into DT Holdings LLC and Ditech Mortgage Company, and the merger resulted in the entity Ditech. But no evidence was provided of any relationship between IndyMac (the original payee on the Note), OneWest, which acquired most of IndyMac's assets from the FDIC, or CIT, which acquired OneWest, on the one hand, and Ditech or Green Tree, on the other hand. IndyMac endorsed the Note in blank, but no evidence has been provided as to what happened to the Note after IndyMac endorsed it in blank.

Ditech's counsel learned about the standing dispute no later than March or April 2018. One thing that is clear is Ditech has not provided any proof of what happened to the Note, or that Ditech ever owned it. Therefore, Ditech has failed to present evidence to demonstrate that it has standing to assert its Claim.

### B. Ditech Has Not Satisfied Its Prima Facie Burden to Support Its Proof of Claim

Ditech has not met its evidentiary burden under the Bankruptcy Code and Rules to substantiate its Claim. Only properly prepared and supported proofs of claim constitute *prima facie* evidence of the validity and amount of a claim. *See* FED. R. BANKR. P. 3001(f). Bankruptcy Rule 3001(c) required that Ditech attach either the original or the duplicate of the Note. *See* FED. R. BANKR. P. 3001(c); *see also Lundberg*, 2008 WL 4829846, at *2 ("If, however, the claimant fails to allege facts in the proof of claim that are sufficient to support the claim, *e.g.,* by failing to attach sufficient documentation to comply with Fed. R. Bankr. P. 3001(c), the claim is not automatically disallowed; rather, it is merely deprived of any *prima facie* validity which it could otherwise have obtained."). While Ditech's Claim attached a photocopy of the Note endorsed in blank, no evidentiary support was provided that at any point in time the original of the Note endorsed in blank was delivered to Ditech and that it possesses that original today. As this Court explained in *Minbatiwalla*,

> Upon request of the debtor, the creditor has an obligation to provide an additional documentation underlying its summary and affidavit (such as the original note and mortgage, or a written assignment), within two weeks after dispatch or communication of such a request, or the debtor can file an objection based on a lack of adequate documentation.

424 B.R. at 117.

Debtors' counsel repeatedly requested that Ditech produce documentation establishing its standing. As discussed above, the standing issue was raised with the Court in March and April 2018, and Ditech's counsel filed a letter stating that it had requested Ditech to provide the collateral file. (ECF Doc. # 24.) Ditech's counsel represented that it would file such

16

documentation on the docket.[2]

### C.    The Debtors' Claim Objection is Sustained and the Claim is Expunged

Because Ditech has not satisfied its burden demonstrating that it has standing to assert its Claim, and did not make a *prima facie* showing that it is the holder of the Note, the Debtors' Objection is sustained. *See Minbatiwalla*, 424 B.R. at 119–20 (holding that "in certain circumstances claims can be disallowed for failure to support the claim with sufficient evidence . . . because absent adequate documentation, the proof of claim is not sufficient for the objector to concede the validity of a claim").

However, it appears that a lien exists on the Property. Although Ditech does not demonstrate that it holds the Note, the original Mortgage was recorded against the Property. The Debtors' schedules list the Property as being subject to a lien held by IndyMac for a disputed claim of $400,000 (ECF Doc. # 12-3 at 1); and IndyMac is listed as having a disputed contractual claim incurred in 2003. (*Id.*) The Debtors signed the Note to IndyMac in 2003. Ditech asserts the Claim for approximately the same amount as IndyMac's disputed claim listed by the Debtors. *See Parrish*, 326 B.R. at 718–19 (holding that even where a creditor fails to attach sufficient documentation to its proof of claim, where the debtor schedules a claim that is substantially similar to the claim at issue by the purported assignee, but to the benefit of a

---

[2] Remedies exist under New York law for a claimant who is unable to produce the instrument on which its claim is based. New York State's lost note provision provides a means of recovery on instruments that are lost, destroyed, or stolen. Section 3-804 of the New York Uniform Commercial Code states:

> The owner of an instrument which is lost, . . . may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court shall require security, in an amount fixed by the court not less than twice the amount allegedly unpaid on the instrument, indemnifying the defendant, his heirs, personal representatives, successors and assigns against loss, including costs and expenses, by reason of further claims on the instrument, but this provision does not apply where an action is prosecuted or defended by the state or by a public officer in its behalf.

N.Y. U.C.C. § 3-804. But no such relief has been sought in this case.

17

different creditor, the debtor's acknowledgment in schedules that a lien exists against the property enable the court to sustain the objection but permit the filing of new proofs of claim). While the Objection is sustained and the Claim is expunged, Ditech may seek relief under 11 U.S.C. § 502(j) *if it acts promptly*.  *See Minbatiwalla*, 424 B.R. at 119–20.

## IV. CONCLUSION

For the reasons explained above, the Debtors' Objection to the Claim is **SUSTAINED** and the Claim is **EXPUNGED**.

**IT IS SO ORDERED.**

Dated: July 2, 2018
New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge