**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

In re:

DANIEL BENYAMIN
*a/k/a* DANIEL BENYAMINOV
*d/b/a* BENYAMIN CONSTRUCTION &
REMODELING, LLC

and

LUCY BENYAMIN
*d/b/a* BENYAMIN CONSTRUCTION &
REMODELING, LLC

Debtors.

**FOR PUBLICATION**

Case No. 17-12677 (MG)

Chapter 11

**MEMORANDUM OPINION AND ORDER SUSTAINING DEBTORS'
OBJECTION AND EXPUNGING PROOF OF CLAIM # 5-1**

*A P P E A R A N C E S:*

KORNFELD & ASSOCIATES, P.C.
*Attorney for Debtors Daniel Benyamin and Lucy Benyamin*
240 Madison Avenue
New York, New York 10016
By:    Randy M. Kornfeld, Esq.

REED SMITH LLP
*Attorneys for Ditech Financial LLC*
599 Lexington Ave.
New York, New York 10022
By:    Brian P. Matthews, Esq.

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

Throughout this case Ditech Financial LLC ("Ditech")[1] has shown disdain for this Court

and for debtors Lucy and Daniel Benyamin (the "Debtors"). Ditech's involvement with this case

---

[1] On February 11, 2019, Green Tree Credit LLC and 13 of its affiliates, including Ditech, filed chapter 11 petitions in this Court. (*See* Green Tree Credit LLC, ECF Doc. # 19-10411-JLG; Ditech, ECF Doc. # 19-10414-JLG.) Even though Ditech's chapter 11 case is pending before a different judge in the Southern District, this Court may determine whether the automatic stay applies to this contested matter. State or federal courts have concurrent jurisdiction with the bankruptcy judge before whom the bankruptcy case is pending to determine whether the

began when it filed a proof of claim, asserting that it was the creditor and the servicer of a note secured by an investment property (the "Property") owned by the Debtors. (*See* Claim No. 5-1, filed December 26, 2017.) After unsuccessfully trying for months to get Ditech to provide Debtors' counsel with documents supporting its claim, on May 3, 2018, the Debtors' counsel filed an objection to Ditech's claim for lack of standing.[2] ("Claim Objection," ECF Doc. # 29.) The deadline for a response to the Claim Objection was June 12, 2018, but Ditech failed to file a timely response and failed to appear at the noticed hearing on June 19, 2018. Ditech's counsel filed an untimely response to the Claim Objection on June 26, 2018.[3] ("Response," ECF Doc. # 51.) On July 2, 2018, the Court issued a Memorandum Opinion and Order Sustaining Debtors' Objection to Proof of Claim # 5-1. ("Opinion," ECF Doc. # 53); *In re Benyamin*, 587 B.R. 243 (Bankr. S.D.N.Y. 2018). That Opinion expunged Ditech's claim.

---

automatic stay is in effect. *See, e.g., In re Ivani*, 308 B.R. 132, 135 (Bankr. E.D.N.Y. 2004) (concluding that majority rule, in accord with holdings of lower courts within the Second Circuit, is that federal and state courts have concurrent jurisdiction to determine whether an action is affected by the automatic stay). However, if the automatic stay is in effect, only the bankruptcy judge before whom the case is pending may decide whether to vacate the stay.

The automatic stay under 11 U.S.C. § 362(a) does not apply to an objection to a claim for recovery asserted by Ditech. Sections 362(a)(1) and (3) refer to actions "against the debtor" and to acts to obtain possession of or exercise control over "property of the estate." *Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577–78 (7th Cir. 1989). "There is, in contrast, no policy of preventing persons whom the bankrupt has sued from protecting their legal rights. True, the bankrupt's cause of action is an asset of the estate; but as the defendant in the bankrupt's suit is not, by opposing that suit, seeking to take possession of it, subsection (a)(3) is no more applicable than (a)(1) is." *Id.* The Second and Third Circuits have held the automatic stay is applicable only to actions against the bankrupt or to seizures of property of the bankrupt. *In re Berry Estates, Inc.*, 812 F.2d 67, 71 (2d Cir. 1987); *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982). Consequently, the automatic stay does not prevent this Court from ruling on the objection to Ditech's claim in this contested matter.

[2]     On April 18, 2018, the law firm of Ras Boriskin LLC ("Ras Boriskin") filed a notice of appearance on Ditech's behalf. (ECF Doc. # 23.) The Debtors' counsel served the Claim Objection on Ras Boriskin.

[3]     The untimely Response was filed by a different law firm, purportedly acting on behalf of Ditech—Robertson, Anshutz & Schneid, P.L.—which had not filed a notice of appearance on behalf of Ditech. The docket shows that this Response was served electronically on the Debtors' counsel and on Ras Boriskin. Robertson, Anshutz & Schneid, P.L. made no further appearances in the case.

Following the expungement of its claim, Ditech filed a motion to reconsider the order expunging the claim.[4] ("Motion for Reconsideration," ECF Doc. # 55.) Ditech argued that the mortgage covering the Debtors' Property followed a chain of assignments ending with Ditech.[5] Perhaps most telling of all, however, nowhere in the untimely Response filed by Robertson, Anshutz & Schneid, P.L., or in the Motion for Reconsideration filed by Ras Boriskin, did Ditech allege or offer proof that the note was owned by the Federal Home Loan Mortgage Corporation ("Freddie Mac"). The first time that any of Ditech's counsel told the Court that Freddie Mac allegedly owned the note was during a hearing on the Motion for Reconsideration on August 28, 2018, when Ditech's counsel said that Freddie Mac was the "investor" and Ditech was the servicer.[6] ("August 28 Transcript," ECF Doc. # 71, at 9–15.) At the hearing on August 28, 2018, Ditech's counsel showed the Court the "wet-ink" original of the note that until that hearing Ditech claimed to own but at the hearing Ditech's newest counsel stated that the note was owned by Freddie Mac.

At the end of the August 28, 2018 hearing, the Court granted the Motion for Reconsideration, directed counsel to take discovery, if necessary, and said the matter would be set down for an evidentiary hearing to determine if Ditech had standing to file the proof of claim. (*Id.* at 26.) Because of delays occasioned by Ditech's repeated failure to timely respond to

---

[4] Ras Boriskin filed the Motion for Reconsideration.

[5] "Assignment of Mortgage from OneWest Bank, FSB to Ocwen Loan Servicing, LLC, dated March 2, 2017. Assignment of Mortgage from Ocwen Loan Servicing, LLC to Residential Credit Solutions, Inc., dated March 2, 2017. Assignment of Mortgage from Residential Credit Solutions, Inc. to Ditech Financial LLC, dated April 3, 2017." Motion for Reconsideration at 3 n.1.

[6] On August 27, 2018, still another law firm filed a notice of appearance on behalf of Ditech, this time it was the firm of Reed Smith LLP ("Reed Smith") (ECF Doc. # 66). While Ras Boriskin has never withdrawn as counsel, and Robertson, Anshutz & Schneid, P.L. filed a pleading but never filed a notice of appearance, only Brian P. Matthews, Esq. of Reed Smith spoke on behalf of Ditech at the argument on the Motion for Reconsideration on August 28, 2018. Matthews alone represented Ditech at the trial on February 6, 2019.

3

discovery, the evidentiary hearing did not occur until February 6, 2019. In the Joint Pre-Trial Conference Order, Ditech identified a single witness, Bradford Hardwick, to testify at the hearing. (ECF Doc. # 80, entered January 31, 2019.) That order provided that "No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown." (*Id.* at 3.) On February 5, 2019, the day before the evidentiary hearing, Ditech tried to substitute a different witness in place of Hardwick (who Debtors' counsel had deposed). (ECF Doc. # 85.) At the start of the February 6 evidentiary hearing the Court refused to permit Ditech to substitute a new witness for Hardwick. Both sides were permitted to designate portions of Hardwick's deposition transcript and those were admitted in evidence. (ECF Doc. ## 86, 87.) The only witness to testify at the hearing for both direct and cross-examination was Daniel Benyamin. In addition to the witness testimony, exhibits were introduced in evidence.

As explained below, Ditech failed to establish that it had standing to file the proof of claim, either as the servicer of the note or as the holder of the note. Accordingly, the Debtors' Objection is sustained and Ditech's proof of claim is **EXPUNGED**.

## I. BACKGROUND[7]

In 2003, the Debtors signed a promissory note in favor of IndyMac Bank, F.S.B. ("IndyMac") that was secured by the Property (the "Note"). *Benyamin*, 587 B.R. at 244. At some point thereafter, IndyMac initiated a foreclosure action in New York State Court against the Debtors. (ECF Doc. #63 ¶ 7.) On September 25, 2017 ("Petition Date"), while the foreclosure action was pending, the Debtors filed a voluntary petition (the "Petition") under Chapter 11. *Benyamin*, 587 B.R. at 245. According to the schedules filed with the Petition, the

---

[7] This Opinion contains the Court's findings of fact pursuant to FED. R. CIV. P. 52, made applicable to this contested matter by FED. R. BANKR. P. 9014 and 7052.

4

Debtors owned the Property and the Property was subject to a lien held by IndyMac Bank. The schedules list Ditech on the creditor's list for "notice purposes only." (*Id.*)

On December 26, 2017, Ditech filed a proof of claim in this case allegedly secured by the Property. The proof of claim states that Ditech is the current creditor and servicer of the Note, and that the claim has *not* been acquired from someone else. ("Proof of Claim," Claim 5-1, at 1 and 4.) Ditech's Proof of Claim also attaches, *inter alia*, a copy of the Note with an endorsement in blank. (*Id.*) The Proof of Claim is self-contradictory in the sense that it states that Ditech did not acquire its claim from someone else even though Ditech is not a party to the attached Note (IndyMac is identified in the Note as the lender) and the Note was endorsed in blank. Also, as explained further below, the Proof of Claim is inconsistent with Ditech's ultimate view of the case. At trial Ditech claimed that the Note was owned by the Freddie Mac and that Ditech was the servicer of the Note.

On May 3, 2018, the Debtors objected to Ditech's Proof of Claim, arguing that it lacked standing to file the Proof of Claim. The Debtors' Claim Objection to Ditech's Proof of Claim set a response deadline of June 12, 2018 and a hearing date of June 19, 2018. (ECF doc. # 29.) Ditech did not file a timely response and did not appear at the June 19, 2018 hearing. *Benyamin*, 587 B.R. at 244.

Ditech filed an untimely response to the Debtors' objection on June 26, 2018. (The "Response," ECF Doc. # 51). It purported to attach assignments of the mortgage (*but not of the Note*) from OneWest to Ocwen, from Ocwen to Residential Capital Solutions, Inc. ("Residential Capital"), and from Residential Capital to Ditech. (*Id.* ¶ 8-10.) Each assignment was dated in either March or April of 2017. (*Id.*) The Response also attached a Possession Statement by a Ditech Employee, stating that Ditech's document custodian came into possession of the original

5

Note on December 7, 2015.  (Response, Ex. D.)  That so-called Possession Statement is based on inadmissible hearsay.

On July 2, 2018, this Court issued its Opinion and Order expunging Proof of Claim # 5-1 because Ditech failed to establish standing.  *Benyamin*, 587 B.R. at 253.  The Opinion provided that Ditech could seek relief from the Order expunging the Proof of Claim if it promptly sought relief under 11 U.S.C. 502(j).  *Id.*

Two weeks after the Opinion was issued, Ditech moved the Court to reconsider.  (Motion for Reconsideration.)  The Court held a hearing on the Motion for Reconsideration on August 28, 2018.  At the hearing, even though the Proof of Claim stated that Ditech was the creditor, and the Response attached documentation showing that Ditech was the owner of the mortgage, Ditech's counsel argued that Freddie Mac, not Ditech, is the "investor" in the Note.  (August 28 Transcript, at 8:1-2.)  Counsel described Ditech as the servicer and the holder of the Note.  (*Id.* at 10:2-3).  Ditech's counsel, for the first time, showed the Court the "wet-ink" original of the Note.  (*Id.* at 20:5-14.)  Counsel stated that "physically the note was held by BNY Mellon as a custodian."  (*Id.* at 10:9-10.)

The day after the hearing, the Court issued an order granting the Motion for Reconsideration.  (ECF Doc. # 68.)  After numerous delays occasioned by Ditech's failure to timely respond to discovery, the Court scheduled an evidentiary hearing for February 6, 2019 to determine whether Ditech had standing to file the Proof of Claim.  In a letter and then in the Joint Pre-Trial Order, Ditech identified Bradford Hardwick as its sole witness and Mr. Hardwick was deposed.  (ECF Doc. ## 75, 80.)  Two days before the scheduled trial, however, Ditech's counsel claimed that Mr. Hardwick was no longer available to testify at trial and attempted to substitute another witness.  (ECF Doc. # 85.)  The substitution was not allowed by the Court.  In lieu of

6

live testimony from Hardwick, both parties designated portions of Mr. Hardwick's deposition transcript which were admitted in evidence. (ECF doc. ## 86, 87.)

While the Debtors' Claim Objection was pending, the Debtors filed an application to sell the Property free and clear of all liens and encumbrances pursuant to section 363 of the Bankruptcy Code. (ECF Doc. # 49.) The Court granted the application, found that the purchasers of the Property constituted good faith purchasers within the meaning of section 363(m) of the Bankruptcy Code, but ordered that the sale proceeds be held in escrow by Debtors' counsel until further order of the Court. (*Id.*)

## II. LEGAL STANDARD

### A. Standing to File A Proof of Claim

To file a proof of claim, a claimant must be a "creditor or the creditor's authorized agent." FED. R. BANKR. P. 3001(b). A "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). A claim is a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5)(A) and (B). "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). "[The] Bankruptcy Code and Fed. R. Civ. P. 17 each have liberal standing provisions, designed to allow a party to appear as long as it has a direct stake in the litigation under the particular circumstances." *In re Conde–Dedonato*, 391 B.R. 247, 250 (Bankr. E.D.N.Y. 2008) (citation and internal quotation marks omitted).

A mortgage servicer has standing to file a proof of claim against a debtor pursuant to its duties as a servicer. *Id.* (citing *In re Viencek*, 273 B.R. 354, 359 (Bankr. N.D.N.Y. 2002); *Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002); *Bankers Trust (Delaware) v. 236 Beltway Inv.*,

7

865 F. Supp. 1186, 1191 (E.D. Va. 1994); *In re Tainan*, 48 B.R. 250, 252 (Bankr. E.D. Pa. 1985)). To establish standing as a servicer, the claimant must show that it is an authorized agent of an entity that has the right to enforce the note. *In re Veal*, 450 B.R. 897, 920 (B.A.P. 9th Cir. 2011) ("When debtors . . . challenge an alleged servicer's standing to file a proof of claim regarding a note governed by Article 3 of the UCC, that servicer must show it has an agency relationship with a 'person entitled to enforce' the note that is the basis of the claim."); s*ee also In re Parrish*, 326 B.R. 708, 720 (Bankr. N.D. Ohio 2005).

An assignee of a note and mortgage also has standing to file a proof of claim. *Id.* at 251. For an assignee to establish standing, the assignee must provide proof of assignment of the note to the assignee or must demonstrate that the note has been endorsed in blank and that the assignee has physical possession of the note. *Benyamin*, 587 B.R. at 251 (*citing In re Conde–Dedonato*, 391 B.R. 247, 251 (Bankr. E.D.N.Y. 2008)).

### B.    Burden of Proof

Bankruptcy Rule 3001(f) provides that "a proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). Bankruptcy Rule 3001 requires a claimant to attach supporting documentation to a proof of claim in a bankruptcy case. Bankruptcy Rule 3001(c) provides that:

> [W]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

FED. R. BANKR. P. 3001(c)(1). Failure to attach the documentation required by Bankruptcy Rule 3001 will result in the loss of the prima facie validity of the claim. *In re Minbatiwalla*, 424 B.R. 104, 119 (Bankr. S.D.N.Y. 2010) ("[I]n certain circumstances claims can be disallowed for

8

failure to support the claim with sufficient evidence, even if this is not a specifically enumerated reason for disallowance under 11 U.S.C. § 502(b), because absent adequate documentation, the proof of claim is not sufficient for the objector to concede the validity of a claim."); *In re Lundberg*, 2008 WL 4829846, at *7-8 (Bankr. D. Conn. Oct. 27, 2008) ("If . . . the claimant fails to allege facts in the proof of claim that are sufficient to support the claim, e.g., by failing to attach sufficient documentation to comply with Fed. R. Bankr. P. 3001(c), the claim is . . . deprived of any prima facie validity which it could otherwise have obtained."); *In re Hight*, 393 B.R. 484, 493 n.7 (Bankr. S.D. Tex. 2008) ("[F]ailure to comply with Rule 3001(c) merely renders a claim to not constitute 'prima facie evidence of the validity and amount of the claim.'") (internal citation omitted). However, failure to attach the required documentation does not automatically render the claim invalid. *Hight*, 393 B.R. at 493 n.7 ("[W]hile the Objection to Claim properly states that failure to comply with Rule 3001(c) is 'improper,' the Court notes that such a failure does not automatically render a claim invalid.").

In the prior Opinion in this case, this Court held that Ditech's Proof of Claim was not entitled to *prima facie* validity and that the claim should be expunged. *In re Benyamin*, 587 B.R. at 252. While the Court subsequently granted the Motion for Reconsideration, the Court made clear that Ditech still carried the burden of proof. The Court stated, "the fact that Ditech may now have possession of the note, wet-ink original endorsed in blank, in my view is not in itself sufficient. I want to know the who, what, where, when and why. Title to the note, Ditech's role as servicer, and all of those facts." (August 28 Transcript, at 26:16-20.) The Proof of Claim was not entitled to be treated as *prima facie* evidence of validity and amount because of the numerous inaccuracies found in the document and the lack of supporting documentation. *See In re Milliman*, No. 17-10393, 2018 WL 1475937, at *3 (Bankr. D. Kan. Mar. 23, 2018) ("Accurately

9

reporting information on a proof of claim is critical in every case because Fed. R. Bankr. P. 3001(f) accords properly prepared claims the presumption of validity."). Accordingly, Ditech bears the burden of proof in this case.

### III. DISCUSSION

Under Ditech's view of the case, Freddie Mac obtained the Note at some unidentified time before the Petition Date. Freddie Mac then entered into two agreements, also before the Petition Date. Under the first agreement, Ditech agreed to act as servicer of the Note. Under the second agreement, Bank of New York Mellon Trust Company, N.A. ("BNY Mellon") agreed to act as custodian of the Note for both Freddie Mac and Ditech. Thus, according to Ditech, Ditech had standing to file the Proof of Claim (1) because it was in constructive possession of the Note on the Petition Date, through its custodial agent BNY Mellon, and (2) because it was the servicer of the Note on the Petition Date. Ditech failed to prove either theory at trial. Accordingly, Ditech's claim is expunged.

Ditech cannot show that it was the holder of the Note on the Petition Date. To prove this point, Ditech attempted to introduce into evidence a custodial agreement between Freddie Mac, Ditech, and BNY Mellon. The Debtors objected, arguing that it was inadmissible because the document was undated, unsigned, and Mr. Hardwick testified that he had no personal knowledge of it. The Court sustained the objection. Without the custodial agreement, Ditech failed to show that it was in actual or constructive possession of the Note on the Petition Date. Even if the custodial agreement had been admitted in evidence, the Court would still not have sufficient evidence to find that Ditech was in constructive possession of the Note as of the Petition Date because the custodial agreement is not dated. Furthermore, the document does not refer to the Note or to the Debtors. Thus, constructive possession of the Note, through alleged custodian

10

BNY Mellon, cannot be the basis of Ditech's standing.  Actual possession of the note cannot be the basis of Ditech's standing either because Ditech admitted that did not come into actual possession of the Note until BNY Mellon transferred the Note to Ditech in the summer of 2018.

Ditech also argues that it has standing to file a Proof of Claim because it was the servicer of the Note.  This argument fails as well.  As explained above, a purported servicer of a note must show that it is an authorized agent of an entity that has the right to enforce the note.  *In re Veal*, 450 B.R. at 920.  Ditech introduced evidence showing that it is Freddie Mac's agent, but it failed to show that Freddie Mac had the right to enforce the Note.  Ditech argued that Freddie Mac had standing to enforce the Note because it had constructive possession of the Note on the Petition Date due to its custodial relationship with BNY Mellon.  Ditech was unable to prove the custodial relationship between Freddie Mac and BNY Mellon for the same reasons that Ditech could not prove the custodial relationship between Ditech and BNY Mellon: the custodial agreement was not admitted into evidence, it was not dated, and it does not refer to the Note or the Debtors.[8]  Thus, Ditech did not prove that Freddie Mac could have enforced the Note and, accordingly, Ditech did not prove that it had standing as the servicer of the Note.  *See also In re Idicula*, 484 B.R. 284 (Bankr. S.D.N.Y. 2013) (denying servicer's motion to lift automatic stay where servicer did not provide evidence that its principal had the right to enforce the note securing the property).

---

[8] Considering how heavily Ditech relied on the custodial agreement with BNY Mellon, and on Ditech's supposed relationship with BNY Mellon and with Freddie Mac, Ditech should have called witnesses to testify from BNY Mellon and Freddie Mac.  It did not do so.

11

## IV.  CONCLUSION

For the foregoing reasons, Poof of Claim 5-1 is **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:   February 13, 2019
         New York, New York

                              ___*Martin Glenn*___
                                MARTIN GLENN
                     United States Bankruptcy Judge