USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

DANIEL BENYAMIN a/k/a DANIEL BENYAMINOV d/b/a BEYAMINOV CONSTRUCTION & REMODELING, LLC

and

LUCY BEYAMIN d/b/a BENYAMINOV CONSTRUCTION & REMODELING, LLC

Debtors.

Chapter 11 Case No. 17-12677-MG

---

DITECH FINANCIAL LLC,

Appellant,

v.

DANIEL BENYAMIN a/k/a DANIEL BENYAMINOV d/b/a BEYAMINOV CONSTRUCTION & REMODELING, LLC, and LUCY BEYAMIN d/b/a BENYAMINOV CONSTRUCTION & REMODELING, LLC.

Appellees.

No. 19-CV-1907 (RA)

OPINION AND ORDER

---

RONNIE ABRAMS, United States District Judge:

Appellant Ditech Financial LLC ("Ditech") appeals from an order of the United States Bankruptcy Court for the Southern District of New York (Glenn, J.) expunging Ditech's proof of claim against the Chapter 11 Debtors, Lucy and Daniel Benyamin (the "Debtors") for $455,424.72. For the reasons set forth below, the order of the bankruptcy court is affirmed.

# BANKRPTCY COURT PROCEEDING[1]

On December 15, 2003, the Debtors obtained a loan from IndyMac Bank, F.S.B. ("IndyMac"), executed a promissory note (the "Note") to repay the loan, and secured the Note with a mortgage on a property at 319 East 105th Street, #5E, New York, NY 10029 (the "Property"). *See* App. 94-117 (Claim 5-1, Part 2). At some point thereafter, IndyMac initiated a foreclosure action in New York State Court against the Debtors. *See* App. 508 (Bankr. Dkt. 89, at 4).

On September 25, 2017, while the foreclosure action was pending, the Debtors petitioned for Chapter 11 bankruptcy relief in the United States Bankruptcy Court in the Southern District of New York. *See* App. 18 (Bankr. Dkt. 1). According to the schedules filed with the Petition, the Debtors owned the Property and the Property was subject to a lien held by IndyMac. *See* App. 37, 49 (Bankr. Dkt. 12-1, 12-3). The schedules list Ditech on the creditor's list for "notice purposes only." *See* App. 53 (Bank. Dkt 12-4, at 2). The Petition was assigned to United States Bankruptcy Judge Glenn. *See* Dkt. 4.

On December 26, 2017, Ditech filed a proof of claim for $455,424.72 against the Debtors. *See* App. 79-81 (Proof of Claim 5-1). Ditech's proof of claim asserted that it was both the creditor and servicer of the Note and asserted that Ditech did not acquire the claim from someone else. *See id*. at 79; *see also* App. 82 (Mortgage Proof of Claim Attachment). The proof of claim attached, *inter alia*, a copy of the Note that identified IndyMac as the lender, did not list Ditech as a party, and was endorsed in blank, as well as a copy of the mortgage and a ledger of payments. *See* App. 82-147 (Claim 5-1, Part 2).

---

[1] Unless otherwise noted, these facts are drawn from the record in the U.S. Bankruptcy Court in the Southern District of New York. *See* App., Dkt. 6-1. The Court recites only those facts necessary to resolve the instant appeal.

On May 3, 2018, Debtors filed an objection to Ditech's proof of claim, arguing that Ditech lacked standing. *See* App. 148 (Bankr. Dkt. 29). Ditech did not file a timely response or appear at a June 19, 2018 hearing on the objection. *See* App. 509 (Bankr. Dkt. 89, at 5). Ditech filed an untimely response in opposition to the objection on June 26, 2018, which purported to attach assignments of the mortgage (but not of the Note) from OneWest Bank, FSB[2] to Ocwen Loan Servicing, LLC; from Ocwen Loan Servicing, LLC to Residential Capital Solutions, Inc.; and from Residential Capital Solutions, Inc. to Ditech. *Id.*; *see also* App. 256-275 (Bankr. Dkt. 51; Bankr. Dkt. 51-1; Bankr. Dkt. 51-2; Bankr. Dkt 51-3). The response also provided that a "request for the original note was made to Ditech and once the note is received by Ditech's counsel, it will be made available for the Debtors' review," but that "[i]n the meantime," the response attached "a Possession Statement of Ditech, dated September 26, 2017, indicating that Ditech has possession of the original note." App. 257 (Bankr. Dkt. 51 at ¶ 4); *see also* App. 277-279 (Bankr. Dkt 51-4).[3]

On July 2, 2018, Judge Glenn issued an opinion and order sustaining the Debtors' objection and expunging Ditech's claim on the grounds that Ditech had failed to make a *prima facie* showing of the validity of its claim and had failed to establish standing. *See* App. 281 (Bankr. Dkt. 53). Ditech filed a motion for reconsideration of the July 2, 2018 opinion and order, *see* App. 299 (Bankr. Dkt. 55), which the Debtors opposed through a declaration of their counsel, *see* App. 316 (Bankr. Dkt. 63) ("Kornfield Decl."). The declaration stated, "The loan is owned by the Federal Home Loan Mortgage Corporation, better known as Freddie Mac." *Id.* at ¶ 3. The declaration attached as an exhibit "a current page from the Freddie Mac website showing categorically that it

---

[2] The record indicates that "OneWest acquired substantially all of the assets" of IndyMac. App. 515 (Bankr. Dkt 71 at 25:3-4).
[3] Judge Glenn found that the "Possession Statement" was "based on inadmissible hearsay." App. 510 (Bankr. Dkt. 89, at 6).

3

is the owner of the debtors' loan and was at the time of the filing of the proof of claim by Ditech wherein it incorrectly listed itself as the 'current creditor.'" *Id*. at ¶ 3 & Ex. A.

Judge Glenn held a hearing on the motion for reconsideration on August 28, 2018. *See* App. 391 (Bankr. Dkt. 71) ("Aug. 28, 2018 Tr."). Although Ditech's proof of claim stated that Ditech was the creditor, Ditech's counsel argued for the first time at the hearing that Freddie Mac—not Ditech—was the "investor" in the note, that Ditech was "both servicer of the note and holder of the note," and that "physically, the note was held by BNY Mellon as a custodian . . . for Ditech." Aug. 28, 2018 Tr. at 7:9-10:12.[4] In response to Judge Glenn's questioning about Ditech's apparent change in position, Ditech's counsel acknowledged that Freddie Mac was not listed on Ditech's proof of claim and that Ditech had not previously represented that Freddie Mac was the owner or "investor" in the note. *Id*. at 8:11-9:16; *see also id.* at 14:16-16:19. Ditech's counsel further stated that he was "not prepared to identify how [BNY Mellon] came in[to] possession of the note," but that he "believe[d] that the evidence will show after an evidentiary hearing and discovery if required that BNY held th[e] note . . . for Ditech" on December 26, 2017, the date on which Ditech filed its proof of claim. *Id*. at 12:9-21. At the hearing, Ditech showed the bankruptcy court the "wet-ink" original of the note for the first time, *id*. at 20:5-14, after which Judge Glenn granted Ditech's motion for reconsideration and stated that he would schedule an evidentiary hearing. *Id*. at 26:10-11. Judge Glenn further stated that he found Ditech's position "inconsistent and unrevealing throughout" and that he "want[ed] to know the who, when, where, when and why. Title to the note, Ditech's role as servicer, and all of those facts." *Id.* at 26:14-20.

In preparation for the evidentiary hearing, the Debtors deposed Ditech's witness, Bradford Hardwick, and the parties filed pre-trial briefing and a joint pre-trial order. *See* App. 423-440

---

[4] BNY Mellon stands for Bank of New York Mellon Trust Company, N.A. *See* Bankr. Dkt. 89, at 10.

4

(Bankr. Dkt. 78-80). The joint pre-trial order listed Mr. Hardwick as Ditech's only witness and provided, "No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown." App. 439 (Bankr. Dkt. 80). On February 4, 2019, two days before the evidentiary hearing, Ditech's counsel filed a letter stating that Mr. Hardwick was "unable to attend the trial due to child care constraints." App. 441 (Bankr. Dkt. 81). The following day, Ditech's counsel filed another letter adding that "Ditech was able to schedule a different corporate representative, Christy L. Christensen, to appear at the trial," and that Ms. Christensen "will be prepared to address the same issues as Mr. Hardwick." App. 444 (Bankr. Dkt. 85). The letter further stated, "As a corporate representative of Ditech, Mr. Hardwick's deposition testimony is binding on Ditech and can be used to cross-examine Ms. Christensen." *Id*. The letter included a quote from Debtors' counsel, objecting "on the grounds that she is not competent to testify under the circumstances, including but not limited to the Court's directive to identify witnesses or be barred (December 4, 2018 conference minutes), FRE sections 601, 602 and that she is being presented as a 'strawman' for Mr. Hardwick offering nothing more than parroted testimony and is prejudicial to Debtors." *Id*.

At the evidentiary hearing on February 6, 2019, counsel for Debtors argued that Ditech had failed to submit an affidavit attesting to Mr. Hardwick's unavailability and had failed to establish Ms. Christiansen's qualification as a 30(b)(6) witness. *See* App. 522-32 (Bankr. Dkt. 95, at 4-5) ("Feb. 6, 2019 Tr."). Judge Glenn found that good cause had not been shown to call a witness not identified in the pretrial order, and accordingly did not permit Ms. Christensen to testify. *Id*. at 5:24-6:7. In so doing, Judge Glenn stated that he considered Ditech's attempts to substitute its 30(b)(6) witness on the eve of trial "to be a repeat [of] Ditech's conduct," as "Ditech has consistently shown total disdain for this Court and the objection to the claim of the Debtor" and

5

"it is only as the eleventh and three-quarter hour that Ditech has now taken the position that Freddie Mac is the creditor." *Id*. at 7:14-18, 8:5-7.  Judge Glenn further noted that "the Court's review of the proof of the claim that Ditech filed shows that it contains inaccurate information.  It indicated that it was the creditor and the servicer, the position . . . that Ditech now disclaims." *Id*. at 8:10-14.  Judge Glenn nonetheless conditionally admitted the parties' designations and counter-designations of Mr. Hardwick's deposition transcript and permitted Ditech to lay a foundation for the admission of exhibits through Mr. Hardwick's deposition testimony. *Id*. at 6:8-13, 9:20-10:11. Judge Glenn admitted three of Ditech's proposed exhibits and excluded one exhibit—a purported custodial agreement between Ditech, BNY Mellon, and Freddie Mac—on the grounds it constituted inadmissible hearsay in light of Mr. Hardwick's testimony that he lacked personal knowledge of it.  *Id*. at 12:8-17:13.

At the hearing, counsel for Ditech argued that the excluded exhibit, in conjunction with Mr. Hardwick's deposition testimony, established that BNY Mellon, as custodian of the note, held the note on behalf of Ditech and Freddie Mac.  *Id*. at 36:5-8.  Judge Glenn stated that neither the excluded exhibit nor the cited portion of Mr. Hardwick's deposition testimony "show that Freddie Mac owned the note." *Id*. at 36:16-21.  Judge Glenn proceeded to question Ditech as to why it did not depose or call a witness from Freddie Mac, stating:

> You say Freddie Mac is the investor that owns the note, but you didn't call anybody from Freddie Mac.  You didn't depose anybody from Freddie Mac. You haven't offered any evidence. You're showing Hardwick's testimony. He didn't work on this; he had no direct knowledge of it. He read some documents. Maybe he's a document custodian for Ditech, but he's not testifying about Ditech's role, he's testifying about Freddie Mac.

*Id*. at 38:1-8.  When Judge Glenn further stated, "You could have gotten documents from Freddie Mac and had somebody authenticate documents establishing that Freddie Mac

6

owns the note, but you didn't do that," Ditech's counsel conceded, "That's true, Your Honor." *Id*. at 38:17-20.

Ditech's counsel proceeded to argue that the exhibits admitted into evidence "establish that Ditech was the servicer of [sic] behalf of Freddie Mac and it held the note through its document custodian, BNY Mellon, and therefore had standing to . . . file a proof of claim. The fact that there is an investor of the loan is irrelevant to that portion of the analysis." *Id*. at 42:6-11. When Judge Glenn questioned, "You're telling me it doesn't matter who owned the note," Ditech's counsel responded affirmatively. *Id*. at 42:17-19. Judge Glenn also questioned why Ditech did not "bring in anybody from the custodian [BNY Mellon] to say we had possession of the note on the date the proof of claim was filed," and Ditech's counsel responded that possession was established through the admitted exhibits and deposition testimony. *Id*. at 43:4-44:5.

On February 13, 2019, Judge Glenn issued an opinion and order expunging Ditech's proof of claim against the Debtors. *See* App. 505 (Bankr. Dkt. 89) ("Feb. 13, 2019 Opinion"). Judge Glenn held that Ditech failed to prove it had standing to file a proof claim, either as a holder of the note through its purported custodial agreement with BNY Mellon or as a servicer of the note. *Id*. at 10. First, he held that Ditech failed to prove that it had constructive possession of the note on the Petition Date because the custodial agreement with BNY Mellon was found inadmissible at the February 6, 2019 hearing due to Mr. Hardwick's testimony that he lacked personal knowledge of the agreement. *Id*. Judge Glenn further held that even if the custodial agreement with BNY Mellon had been admitted into evidence, "the Court would still not have sufficient evidence to find that Ditech was in constructive possession of the Note as of the Petition Date because the

7

custodial agreement is not dated," and "does not refer to the Note or to the Debtors." *Id*. Judge Glenn therefore concluded that "constructive possession of the Note, through alleged custodian BNY Mellon, cannot be the basis of Ditech's standing," and that "[a]ctual possession of the note cannot be the basis of Ditech's standing either because Ditech admitted that [it] did not come into actual possession of the Note until BNY Mellon transferred the Note to Ditech in the summer of 2018." *Id*. at 10-11.

Second, Judge Glenn rejected Ditech's argument that it had standing as the servicer of the Note. *Id*. at 11. Judge Glenn stated that "a purported servicer of a note must show that it is an authorized agent of an entity that has the right to enforce the note." *Id*. (citing *In re Veal*, 450 B.R. 897, 920 (B.A.P. 9th Cir. 2011)). Judge Glenn held that "Ditech introduced evidence showing that it is Freddie Mac's agent, but it failed to show that Freddie Mac had the right to enforce the Note." *Id*. Although "Ditech argued that Freddie Mac had standing to enforce the Note because it had constructive possession of the Note on the Petition Date due to its custodial relationship with BNY Mellon," Judge Glenn found that "Ditech was unable to prove the custodial relationship between Freddie Mac and BNY Mellon for the same reasons that Ditech could not prove the custodial relationship between Ditech and BNY Mellon: the custodial agreement was not admitted into evidence, it was not dated, and it does not refer to the Note or the Debtors." *Id*. Judge Glenn also noted that in light of "how heavily Ditech relied on the custodial agreement with BNY Mellon, and on Ditech's supposed relationship with BNY Mellon and with Freddie Mac, Ditech should have called witnesses to testify from BNY Mellon and Freddie Mac" but did not do so. *Id*. at 11 n.8.

8

## PROCEDURAL HISTORY

On February 28, 2019, Ditech filed a notice of appeal of Judge Glenn's February 13, 2019 opinion to this court. Dkt. 1. Ditech filed a brief in support of its appeal on May 2, 2019, Dkt. 6, the Debtors (the Appellees in this action) filed in brief in opposition to the appeal on June 17, 2019, Dkt. 9, and Ditech filed a reply in further support of its appeal on July 15, 2019, Dkt. 12.

## LEGAL STANDARD

District courts have appellate jurisdiction over "final judgments, orders, and decrees" of bankruptcy courts under 28 U.S.C. § 158(a)(1). A district court reviews a bankruptcy court's findings of fact for clear error and reviews conclusions of law de novo. *See In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000). "Mixed questions of fact and law are subject to de novo review." *Babitt v. Vebeliunas*, 332 F.3d 85, 90 (2d Cir.2003). "A finding of fact is clearly erroneous when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Adler v. Lehman Bros. Holdings Inc.* (*In re Lehman Bros. Holdings Inc.*), 855 F.3d 459, 469 (2d Cir. 2017) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)). By contrast, "[h]armless error, meaning an error not inconsistent with substantial justice or that does not affect the parties' substantial rights, is not grounds for reversal." *McNerney v. ResCap Borrower Claims Trust* (*In re Residential Capital, LLC*), 563 B.R. 477, 485 (S.D.N.Y. 2016).

"Matters left to the [bankruptcy] court's discretion are reviewed for abuse of discretion." *In re Adelphia Commc'ns Corp.*, 342 B.R. 122, 126 (S.D.N.Y. 2006) (internal quotation marks omitted). "A bankruptcy court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *In re Soundview Elite Ltd.*, 646 Fed. App'x 1 (2d Cir. 2016).

9

"A district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Margulies v. Hough* (*In re Margulies*), 566 B.R. 318, 328 (S.D.N.Y. 2017) (citation omitted).

## DISCUSSION

The Federal Rules of Bankruptcy Procedure provide that a "creditor or the creditor's authorized agent" may execute a "proof of claim," which is "a written statement setting forth a creditor's claim." Fed. R. Bankr. P. 3001(a)-(b). A "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor," 11 U.S.C. § 101(10)(A), and a "claim" is a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment," *id.* § 101(5)(A)-(B). "In other words, to have an allowed proof of claim, the claimant must prove an initial fact: that it is the creditor to whom the debt is owed or, alternatively, that it is the authorized agent of the creditor. The real party in interest with respect to a mortgage proof of claim is the party entitled to enforce the note and its accompanying mortgage." *In re Carssow-Franklin*, 213 F. Supp. 3d 577, 592 (S.D.N.Y. 2016) (internal citations and quotation marks omitted).

As described above, the bankruptcy court held that Ditech (1) failed to establish standing as a holder of the Note on the Petition Date through its custodial agent, BNY Mellon, because the custodial agreement was inadmissible, undated, and did not refer to the Note or the Debtors, and (2) failed to establish standing as a servicer of the Note for Freddie Mac on the Petition Date because Ditech "failed to show that Freddie Mac had the right to enforce the Note." Feb. 13, 2019 Opinion at 11. Ditech argues the bankruptcy court's decision was wrong for three reasons, all of which appear to focus on Ditech's purported standing as a servicer of the Note rather than its purported standing as a holder of the Note. First, Ditech contends that a servicer has standing to

10

file a proof of claim so long as it has a pecuniary interest in the mortgage loan that it services, regardless of whether the owner of the mortgage loan has a right to enforce the note. *See* Ditech Br., Dkt. 6, at 1. Second, Ditech claims that it did, in fact, produce sufficient evidence to establish that Freddie Mac owns the Debtor's mortgage loan and thus had the right to enforce the Note. *Id*. at 2. Third, Ditech argues that the Bankruptcy Court abused its discretion when it refused to permit Ditech's corporate witness, Christy L. Christensen, to testify at the February 6, 2019 hearing.

For the reasons that follow, the Court holds (1) that the bankruptcy court properly held that a mortgage servicer has standing to file a proof of claim only if the entity on whose behalf it is conducting servicing activities has the right to enforce the note; (2) that the bankruptcy court did not commit clear error in holding that Ditech failed to establish that Freddie Mac had the right to enforce the Note; and (3) that the bankruptcy court did not abuse its discretion in denying Ditech's request to substitute its 30(b)(6) witness on the eve of trial.

**I.    The Bankruptcy Court Properly Held That a Mortgage Servicer Has Standing to File a Proof of Claim Only if the Entity on Whose Behalf it is Conducting Servicing Activities Has the Right to Enforce the Note**

Ditech first argues that the bankruptcy court erred when it held that Ditech could not establish standing as a servicer of the Note without proving that Freddie Mac had the right to enforce the Note. As described above, the bankruptcy court held that that "a purported servicer of a note must show that it is an authorized agent of an entity that has the right to enforce the note." Feb. 13, 2019 Opinion at 11 (citing *In re Veal*, 450 B.R. 897, 920 (B.A.P. 9th Cir. 2011)). The Court reviews the bankruptcy court's legal conclusions de novo. *See In re Bayshore Wire Prods. Corp.*, 209 F.3d at 103.

Ditech argues that the bankruptcy court applied the wrong legal standard for determining a servicer's standing. Under the correct standard, Ditech contends, a servicer need not show that the owner of the loan has a right to enforce the note, but rather, "a servicer of a mortgage loan has

11

standing to file a proof of claim in a bankruptcy if it has a pecuniary interest in a debtor's mortgage loan, and it can demonstrate standing by producing evidence that it presently services the mortgage loan and receives compensation for its servicing activities." Ditech Br. at 9 (citing *In re Viencek*, 273 B.R. 354, 356, 358 (Bankr. N.D.N.Y. 2002); *In re Conde-Dedonato*, 391 B.R. 247, 250 (Bankr. E.D.N.Y. 2008); *In re Wilson*, 532 B.R. 486, 491 (S.D.N.Y. 2015)). Ditech further argues that the record demonstrates that it collects payments and provides other services on the Debtors' mortgage loan and receives compensation for those services, and that Ditech thus established that it has a pecuniary interest in the Debtor's mortgage sufficient to confer standing. *Id*. at 13. Moreover, Ditech maintains that the bankruptcy court's holding "contradicts the principle that the Bankruptcy Code's standing provisions should be construed liberally." *Id*. at 16.

The Debtors, by contrast, argue that the standing requirement is two-fold. They contend that "the first aspect of standing is whether the claim describes an activity for which the Bankruptcy Court can grant relief," and that the "second aspect of standing is whether the creditor is the entity to whom the claim belongs." Opposition Br. at 11. The Debtors maintain that "[s]ervicing a mortgage is the type of claim upon which the correct claimant, one who actually services a contemporaneously held mortgage, can receive relief." *Id*. at 10-11. In their view, however, the second element—"whether Ditech is the entity to which the claim belongs as of the Petition date"—is the locus of the dispute. *Id*. at 11.

Ditech relies on three cases for the proposition that a servicer need only demonstrate a pecuniary interest in the loan in order to establish standing. *See* Ditech Br. at 14-15 (citing *In re Viencek*, 273 B.R. at 356, 358; *In re Conde-Dedonato*, 391 B.R. at 249-50; *In re Wilson*, 532 B.R. at 489, 491). The Debtors argue that all three cases solely "support the first element of standing: 'mortgage standing is the type of claim which warrants standing.'" Opposition Br. at 11. The

12

Court agrees that each of these cases recognizes that a mortgage servicer can have standing, but none hold that such a servicer can do so even if the entity on whose behalf it conducts servicing activities lacks the right to enforce the underlying note.

The bankruptcy court in *In re Viencek*, for example, considered a debtor's motion to expunge a servicer's proof of claim and held that the servicer "was authorized to file the proof of claim as the agent of either the owner or the mortgagee" but that within fifteen days of the court's order, it had "to amend the proof of claim to identify the actual creditor." 273 B.R. at 358. Contrary to Ditech's representation, the case thus demonstrates that a servicer must properly identify the creditor on whose behalf it is conducting servicing activities. Moreover, in *In re Viencek*, the bankruptcy court was considering a motion to expunge in the first instance, whereas the bankruptcy court in this action was considering Ditech's motion for reconsideration after already expunging Ditech's proof of claim on the grounds that Ditech had failed to make a prima facie showing of the validity of its claim and had failed to establish standing. Unlike the servicer in *In re Viencek*, Ditech had already been provided numerous opportunities to produce evidence regarding which entity owned the loan before the Court issued the February 13, 2019 decision that is now before the Court. *See, e.g.*, Feb. 6, 2019 Tr. at 34:10-11 ("Show me the document, the exhibit that shows that Freddie Mac owns the note.").

Similarly, *In re Conde-Dedonato*, the bankruptcy court held generally that a servicer has standing to file a proof of claim, but never held that a servicer may file a proof of claim even if the entity on whose behalf it conducts servicing activities lacks the right to enforce the note. 391 B.R. at 249-50. In that case, the servicer's senior bankruptcy specialist filed an affidavit providing the date on which the servicing activities began as well as the date on which the entity on whose behalf it conducted servicing activities became the holder of the note and mortgage. *Id*. at 249, 251. Both

13

dates were well before the relevant petition date. *Id*. at 249. Accordingly, the bankruptcy court held both that the servicer had standing and that it had established a valid assignment of the note and mortgage to the current holder. *Id*. at 250-52. Contrary to Ditech's characterization of the case, the bankruptcy court never held that the servicer would have standing even if it failed to establish the rights of the current holder or owner of the note. Here, Ditech never introduced admissible evidence at the bankruptcy court level establishing the date on which Freddie Mac purportedly gained ownership of the Note, despite Judge Glenn's instruction at the initial hearing on reconsideration that Ditech must present evidence on "the who, what, where, when, and why" regarding the Note at the then upcoming February 6, 2019 hearing. Aug. 28, 2018 Tr. at 26:13-19.

In the third case Ditech relies on, *In re Wilson*, the court held that "where the claimant is a mortgage servicer, it must provide evidence that it is the servicer *of the relevant mortgage* in order to establish that it has standing to assert a claim for that mortgage." 532 B.R. at 490 (emphasis added). The district court in *In re Wilson* remanded to the bankruptcy court for consideration of whether an amended proof of claim—which had not been before the bankruptcy court—provided adequate record evidence of a purported servicing agent's standing where its attachments included a copy of the mortgage note, the assignment of the mortgage note, and a statement from the purported servicing agent to the debtors. *Id*. at 491-92. The *Wilson* court thus never held that a servicing agent could establish standing even if the owner of the note lacked the right to enforce the note.

The Court agrees with the Debtors that the bankruptcy court rightly held that a servicer can only establish standing to file a proof of claim if the entity on whose behalf it is conducting servicing activities has the right to enforce the Note. As described above, under Rule 3001(b) of

14

the Federal Rules of Bankruptcy Procedure, only "the creditor or the creditor's authorized agent" can execute a proof of claim. A claimant must therefore establish "that it is the creditor to whom the debt is owed or, alternatively, that it is the authorized agent of the creditor. The real party in interest with respect to a mortgage proof of claim is the party entitled to enforce the note and its accompanying mortgage." *In re Carssow-Franklin*, 213 F. Supp. 3d at 592 (internal citations and quotation marks omitted). "Mortgage servicers have been determined to constitute authorized agents with standing to file proofs of claim or seek stay relief." *Id*. (quoting *In re Sia*, No. 10–41873, 2013 WL 4547312, at *12 (Bankr. D. N.J. Aug. 27, 2013)). It necessarily follows that mortgage servicers can establish standing under Rule 3001(b) only as the "authorized agent" of "the party entitled to enforce the note and its accompanying mortgage." *Id*. If Ditech serviced the Note on behalf of a party that was not entitled to enforce the Note, then that party would not qualify as a "creditor," and Ditech would not qualify as the "creditor's authorized agent." Fed. R. Bankr. P. 3001(b). Accordingly, Ditech may establish standing as a servicer on behalf of Freddie Mac only if Freddie Mac has the right to enforce the Note.

      **II.**    **The Bankruptcy Court's Holding that Ditech Failed to Produce Evidence Establishing That Freddie Mac Had the Right to Enforce the Note is Not Clearly Erroneous**

Ditech next argues that even if the bankruptcy court applied the correct legal standard for servicer standing, it erred in holding that Ditech failed to establish that Freddie Mac had the right to enforce the Note. As described above, the bankruptcy court held that "Ditech introduced evidence showing that it is Freddie Mac's agent, but it failed to show that Freddie Mac had the right to enforce the Note." Feb. 13, 2019 Opinion at 11. Although "Ditech argued that Freddie Mac had standing to enforce the Note because it had constructive possession of the Note on the Petition Date due to its custodial relationship with BNY Mellon," the bankruptcy court held that "Ditech was unable to prove the custodial relationship between Freddie Mac and BNY Mellon for

15

the same reasons that Ditech could not prove the custodial relationship between Ditech and BNY Mellon: the custodial agreement was not admitted into evidence, it was not dated, and it does not refer to the Note or the Debtors." *Id*. The Court reviews the bankruptcy court's finding that Ditech failed to establish that Freddie Mac has the right to enforce the Note for clear error. "A finding is 'clearly erroneous' when the reviewing court is 'left with the definite and firm conviction that a mistake has been made.'" *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 426 (2d Cir. 2009) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Ditech does not appear to argue that the bankruptcy court improperly excluded the custodial agreement that purportedly established Freddie Mac's constructive possession of the Note on the Petition Date. Instead, Ditech focuses on two other pieces of evidence that it contends the bankruptcy court "did not address" and that it argues establish that Freddie Mac has the right to enforce the Note. Ditech Br. at 8. The first piece of evidence is deposition testimony from Ditech's corporate designee, Mr. Hardwick, stating that "Freddie Mac is the owner." *Id*. at 17 (citing App. 484 (Hardwick Dep. Tr. at 20)). The Debtors argue that this conclusory statement is insufficient for Ditech to establish that Freddie Mac owned the Note, particularly as Mr. Hardwick never cited any evidence that Freddie Mac owned the Note on the Petition Date. Opposition Br. at 17-18. The Court agrees. When Mr. Hardwick was asked at his deposition whether he had "review[ed] documents showing that the loan was sold to Freddie Mac," he responded "I don't recall. I'm not sure. I don't remember." Hardwick Dep. Tr. at 19:9-13. Debtor's counsel stated that he had not seen any documents demonstrating Freddie Mac's ownership of the loan, to which Ditech's counsel responded, "If there are documents that are specific to that, I will follow up with them." *Id*. at 19:14-21. Debtor's counsel then asked once again, "So in your review of yesterday and the day before, you don't recall seeing any documents showing the sale or the purchase by

16

Freddie Mac of the Benyamin loan?" Mr. Hardwick responded, "No." *Id*. at 19:14-20:3. The Court finds that Mr. Hardwick's conclusory deposition testimony is insufficient to establish that Freddie Mac owns or has the right to enforce the Note. Ditech's counsel had ample time between Mr. Hardwick's December 20, 2018 deposition and the February 6, 2019 hearing to provide documentary evidence supporting Freddie Mac's ownership of the loan—or to depose a witness from Freddie Mac, as Judge Glenn suggested—yet failed to do so. *See* Feb. 6, 2019 Tr. at 38:1-8 ("You say Freddie Mac is the investor that owns the note, but you didn't call anybody from Freddie Mac. You didn't depose anybody from Freddie Mac. You haven't offered any evidence. You're showing Hardwick's testimony. He didn't work on this; he had no direct knowledge of it. He read some documents.")

Ditech also focuses on a declaration submitted by Debtors' counsel stating that "[t]he loan is owned by the Federal Home Loan Mortgage Corporation, better known as Freddie Mac." Kornfield Decl. at ¶ 3. Ditech contends that this statement establishes that the Debtors were not disputing whether Freddie Mac has the right to enforce the Note, and that Ditech relied on this statement to argue that Ditech serviced the loan. Ditech Br. at 17-18. The Debtors, by contrast, argue that they were merely "pointing out in opposition to Ditech's claim of ownership that Freddie Mac also claimed ownership" on its website, but that the "Debtors did not and could not know if the website was correct." Opposition Br. at 16-17. They further contend that "[n]one of Debtors' words or arguments constituted legal waivers or admissions of any kind." Opposition Br. at 16. Indeed, the joint pre-trial order filed in advance of the February 6, 2019 hearing provides that the parties were not stipulating to any facts. *See* App. 437. In Ditech's pretrial brief and argument at the February 6, 2019 hearing, it never referenced the declaration—let alone argued that it established that Freddie Mac owned the Note—despite the fact the Judge Glenn made clear that

17

Ditech bore the burden of proof and repeatedly asked Ditech to identify the evidence that established Freddie Mac's ownership of the Note. *See* Feb. 6, 2019 Tr. at 8:22-9:1 ("I can't find anything in the documents that you've proposed to offer to show that Freddie Mac is the owner of the note"); *see also id.* at 9:12-15 ("Ditech has the burden. What, if any evidence . . . is Ditech relying on to show that Freddie Mac owns the note, and that Ditech is the servicer?"); *id.* at 34:10-11 ("Show me the document, the exhibit that shows that Freddie Mac owns the note."). Having never argued to the bankruptcy court that the declaration establishes that Freddie Mac owned the Note, Ditech cannot so argue for the first time on appeal. *See, e.g. In re Fayolle*, 159 F. App'x 221, 222 (2d Cir. 2005) ("[P]laintiff waived all arguments not presented in the proceeding before the Bankruptcy Court."); *In re Great Atl. & Pac. Tea Co., Inc.*, 472 B.R. 666, 678–79 (S.D.N.Y. 2012) (holding that the Appellant "waived its arguments . . . [that] were not made in Appellant's written submissions to the Bankruptcy Court or by its counsel at the Hearing, and thus the Bankruptcy Court was not able to make findings of fact with respect to them").

The Court therefore holds that the bankruptcy court did not commit clear error in holding—on the evidence before it—that Ditech failed to establish that Freddie Mac had the right to enforce the Note.

### III. The Bankruptcy Court Did Not Abuse its Discretion in Refusing to Permit Ms. Christensen to Testify

Finally, Ditech argues that the Bankruptcy Court abused its discretion when it denied Ditech permission to substitute Ms. Christensen as a 30(b)(6) witness for Mr. Hardwick at the February 6, 2019 hearing. As described above, the parties' joint pre-trial order listed Mr. Hardwick as Ditech's only witness and provided, "No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown." App. 439 (Bankr. Dkt. 80). Two days before the evidentiary hearing, Ditech's counsel filed a letter stating that Mr. Hardwick was

"unable to attend the trial due to child care constraints." App. 441 (Bankr. Dkt. 81). The following day, Ditech filed an additional letter stating that Ms. Christensen was "prepared to address the same issues as Mr. Hardwick" and could be cross-examined using Mr. Hardwick's deposition testimony. App. 444 (Bankr. Dkt. 85). The Debtors objected to Ditech's proposed last-minute substitution. At the evidentiary hearing on February 6, 2019, Judge Glenn found that good cause had not been shown to call a witness not identified in the pretrial order, and accordingly did not permit Ms. Christensen to testify. Feb. 6, 2019 Tr. at 5:24-6:7. Judge Glenn stated that he considered Ditech's attempts to substitute its 30(b)(6) witness on the eve of trial "to be a repeat [of] Ditech's conduct," as "Ditech has consistently shown total disdain for this Court and the objection to the claim of the Debtor." *Id*. at 7:14-18, 8:5-7.

The Court holds that it was well within Judge Glenn's discretion to deny Ditech the right to substitute its 30(b)(6) witness on the eve of trial. Indeed, the Debtors may have been prejudiced if Judge Glenn had permitted the substitution, in light of the fact that the Debtors had not had a chance to depose Ms. Christensen regarding her qualifications, employment history, or familiarity with the underlying case and documents. *See* Feb. 6, 2019 Tr. at 5:7-10 ("[W]e don't know anything about her. We don't know who she's employed by. She looked over some records in the last day on a plane. Mr. Hardwick was involved in this, according to his testimony for months."). Judge Glenn's ruling was made all the more reasonable by the fact that he admitted the designations and counter-designations of Mr. Hardwick's deposition testimony and permitted Ditech to lay a foundation for each exhibit through reference to the deposition testimony. Feb. 6., 2019 Tr. at 10:21-23. By allowing Ditech to introduce exhibits without first laying a foundation through live witness testimony, Judge Glenn mitigated against any prejudice that Ditech may otherwise have faced.

19

Moreover, as Judge Glenn noted at both the February 6, 2019 hearing and in his February 13, 2019 opinion, Ditech could have called witnesses from BNY Mellon and from Freddie Mac who could have testified to the relationship between Ditech, BNY Mellon, and Freddie Mac. *See* Feb. 6, 2019 Tr. at 38:1-20, 43:4-44:5; Feb. 13, 2019 Opinion at 11 n.8. Ditech failed to do so, choosing instead to rely only on its 30(b)(6) witness despite the fact that Mr. Hardwick had previously testified that he lacked any "personal knowledge as to what transpired in the years past regarding the loan, the mortgage, [and] the note," and that his "only knowledge comes from the review of the documents." App. 481 (Hardwick Dep. At 15:19-24). Ms. Christensen presumably had even less familiarity with the underlying documents in light of the fact that by Ditech's own admission, "she [had] basically spent the last 36 hours preparing." Feb. 6, 2019 Tr. at 3:10-11. Accordingly, even if the bankruptcy court had permitted Ditech to substitute its 30(b)(6) witness on the eve of trial, it appears highly unlikely that Ms. Christensen could have established that Freddie Mac had a right to enforce the note and that Ditech thus had standing as a servicer.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's decision is affirmed. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated:   June 1, 2020
         New York, New York

_____
Ronnie Abrams
United States District Judge